IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>REDD ROCK SERAWOP,<br><br>Defendant. | MEMORANDUM OPINION AND ORDER AFFIRMING PRIOR DECISION TO AWARD LOST INCOME AND OTHER RESTITUTION<br><br><br><br>Case No. 2:03-CR-00339 PGC |

On December 4, 2003, a jury found defendant Redd Rock Serawop guilty of voluntary manslaughter in the death of his three-month-old daughter Beyonce Serawop. The court sentenced Mr. Serawop to 120 months in prison and ordered him, under the Mandatory Victims' Restitution Act, to pay $325,751 in restitution to the Estate of Beyonce Serawop for her lost income.[1]

Mr. Serawop appealed to the United States Court of Appeals for the Tenth Circuit. The appellate court reversed his conviction because of an error in Mr. Serawop's voluntary

---

[1]*United States v. Bedonie*, 317 F. Supp. 2d 1285, 1322 (D. Utah 2004), *rev'd on other grounds*, *United States v. Serawop*, 410 F.3d 656 (10th Cir. 2005).

manslaughter jury instruction.[2]  Because of the jury instruction error, the Tenth Circuit did not discuss the restitution award.

Following remand, Mr. Serawop pleaded guilty to voluntary manslaughter.  The plea agreement was made under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, which binds the court to the sentence recommended in the plea agreement.  In this case, the agreed-upon sentence was eight years, which the court accepts.  The plea, however, says nothing about restitution, and the parties have indicated that this matter is for the court's determination.

Before sentencing, the court informed counsel for the government and Mr. Serawop that it intended to order the same amount of restitution at Mr. Serawop's resentencing as it did before his appeal.  The court gave counsel an opportunity to raise objections to the restitution order based on circumstances that may have changed during the twenty months since the court first ordered restitution.  No objections have been lodged with the court, other than Mr. Serawop reserving his previous objections to the very idea of awarding lost income restitution in homicide cases.  The court, of course, has previously rejected Mr. Serawop's arguments, although the Tenth Circuit has yet to speak to the issue.  The court therefore adopts in full its earlier order and memorandum opinion on restitution, and incorporates it into this order with one modification as noted below regarding the payment schedule.  So that the record is clear, Mr. Serawop has preserved all of his objections to the restitution order that he raised during the first sentencing

The court independently reviewed its prior restitution order to determine whether any of the information that the court relied upon needed updating.  In this vein, the court makes the

---

[2] *See Serawop*, 410 F.3d at 670.

following observations.

Dr. Paul Randle, the court's lost income expert, calculated the amount of restitution beginning March 25, 2004 — the day of Mr. Serawop's first sentencing — rather than November 3, 2002, the day Mr. Serawop killed his daughter. This start date may well give the defendant a benefit to which he is not entitled. The MVRA instructs courts to order defendants to "reimburse the victim for income lost by such victim,"[3] and requires that the restitution ordered be "the full amount of each victim's losses."[4] To accurately calculate the full amount of a victim's lost income under the MVRA, the appropriate start date may well be the date of the offense, not the date of the defendant's sentencing. Neither the government nor the victim's representative (Beyonce's mother, Ms. Moya) have urged the court to recalculate the amount. Therefore, the court will make no adjustment to the starting date.

In addition, Dr. Randle's calculations are based on discount rates and inflation rates that arguably are slightly outdated. He used the average interest rate and wage growth rate from 1979 to 2003 to compute Beyonce's lost income. Though data from 2004 would likely now be available — and could therefore provide a more updated lost income calculation — the court takes judicial notice of the fact that economic conditions in 2004 did not change significantly from earlier years, particularly when those conditions are folded into the 25-year average underlying Dr. Randle's figures. Neither of the parties have requested updating of these rates. Therefore, the court will rely on Dr. Randle's earlier information in imposing the award.

---

[3] 18 U.S.C. § 3663A(b)(2)(C).

[4] *Id.* § 3664(f)(1)(A).

Finally, and most important, in October 2004 — five months after the court's restitution order — Congress took action that appears to approve the restitution order in this very case. Congress enacted the Crime Victims' Rights Act (CVRA).[5] This law provides victims with "[t]he right to full and timely restitution as provided in law."[6] In explaining what this provision meant, one of prime sponsors of the legislation stated: "This section provides the right to full and timely restitution as provided in law. We specifically intend to endorse the expansive definition of restitution given by Judge Cassell in . . . *U.S. v. Serawop* in May 2004."[7] While legislative history cannot change the meaning of a statute,[8] Senator Kyl's statement puts the court in the unusual position of having confidence that one of the CVRA's main sponsors endorsed the court's interpretation of Congress' handiwork.

In addition to reaffirming the restitution *amount*, the court must also reexamine its prior decision regarding Mr. Serawop's restitution *schedule*. For the reasons explained in its earlier order,[9] the court reaffirms that the restitution award is due in full immediately but payable on a court-established schedule. The prior restitution schedule remains in place with one slight

---

[5] The Scott Campbell, Stephanie Roper, Wendy Preston, Louarna Gillis, and Nila Lynn Crime Victims' Rights Act, Pub. L. No. 108-405, 118 Stat. 2261 (codified at 18 U.S.C. § 3771 (2004)). *See generally* Jon Kyl et al., *On the Wings of Their Angels: The Scott Campbell, Stephanie Roper, Wendy Preston, Louarna Gillis, and Nila Lynn Crime Victims' Rights Act*, 9 LEWIS & CLARK L. REV. 581 (2005).

[6] 18 U.S.C. § 3771(a)(6).

[7] 150 Cong. Rec. S10911 (daily ed. Oct. 4, 2004) (statement of Sen. Kyl).

[8] *Ardestani v. I.N.S.*, 502 U.S. 129, 135–36 (1991).

[9] *Bedonie*, 317 F. Supp. 2d at 1329–32, *rev'd on other grounds*, *United States v. Serawop*, 410 F.3d 656 (10th Cir. 2005).

modification. The earlier order noted that Mr. Serawop received a $100 per month stipend from his tribe. The court has confirmed, through the probation office, that Mr. Serawop's stipend as of January 2006 has increased to $125 per month. This higher amount will replace the $100 previously ordered. The earlier order remains in full force in all other respects — both as to Mr. Serawop's time in prison and his time after release.

For all these reasons, the court orders defendant Serawop to pay restitution for the lost income of Beyonce Serawop in the amount of $325,751. In addition, it is undisputed by the defendant that restitution in the amount of $1,509 is owed to the Ute Indian Tribe for funeral expenses. This restitution is due immediately in full and payable on the schedule of the full sum of his stipend (currently $125 per month) plus $25 per quarter or 50% of his income (whichever is greater) while in prison and for sixty days after his release from prison. Thereafter, restitution shall be paid at a rate of the full sum of his stipend plus 20% of his take-home pay. The defendant shall advise the court of any material changes in his financial circumstances. Interest on the restitution is waived.

SO ORDERED.

DATED this 9th day of January, 2006.

BY THE COURT:

_____
Paul G. Cassell
United States District Judge